We move to the fourth case this morning, Vang v. Saul. Good morning. May it please the court, my name is one of the perils of paper. My name is Randall Forbes. I represent the disability claimant, Mr. Chongnengwt Vang. There are many details of this case. I'm going to argue just a few general details. The strongest piece of evidence in favor of the disability claimant here is that he stopped working. He had been in the workforce 32 years. He was at his job right before he stopped working, 28 years. And he actually was asked to leave the last job because they saw he was failing. I do not know if that's in the record, though. The point is that if he had been found at a sedentary residual functional capacity level or less, he would have been found disabled based on his age and his educational background. How old was he? He was over 50 at the alleged onset date, born in 1963. But, see, when they talk about light work, et cetera, and then he tries to go into his history and saying that he was really a good worker, and that shows that he's not giving. But at the same time, it's different than what he did before versus what he's capable of doing now. And he's not totally disabled based on the analysis we have here, based on their claim. That is what I'm going to address next, Jerome. I understand what you're saying. The administrative law judge went to great lengths here to find him not disabled. They found one-armed jobs that involved hardly any lifting and allowed him to stand with a cane. Now, that's kind of like the last row of jobs that any person could do and still lose a disability case. So that's the context that we are in. Our strongest issue and strongest preserved issue is the treating physician opinion. His doctor, who had monitored and treated his diabetes and consequent peripheral neuropathy, did issue what probably would be considered several opinions, but the most important one was that he couldn't stand or walk more than an hour a day or sit for more than an hour a day. Those are work-preclusive limitations, regardless of whether you're looking at light work or sedentary work. Other than maybe the reason that the doctor's notes were a little illegible, I think that's mentioned somewhere, I don't see any reason here that's valid to reject that opinion, not in the context of deteriorating and fluctuating diabetes and not in the context of peripheral neuropathy that no doubt the physician would have recognized because physicians, especially family physicians, treat diabetes regularly. They know what peripheral neuropathy, neuropathy in the hands and feet, looks like. What was that doctor's name? Dr. Vinlon. Now both the ALJ and the district court were observing that he didn't say much. Well, the doctor's notes are not ideal. They're like most doctor's notes that disability claimants incur when they get treatment. They're not treatises that satisfy the precision that us lawyers like. But the key is he had fluctuating diabetes and he had peripheral neuropathy, and those are just several of his problems. But those problems were serious enough that the judge put him in the one-arm jobs where he had to use the cane practically the whole time he's standing or walking. Actually, the judge diverged from the hypothetical, and that's another problem which I'll probably bring up in rebuttal. But the judge diverged from the hypothetical in several key points. The hypothetical says one arm reaching and handling a fingering. The judge says in the RFC bilateral handling and fingering. The hypothetical talks about a cane for ambulation and standing, and then all of a sudden in the RFC the cane is just for ambulation. And then there's another anomaly which doesn't make any sense, but the hypothetical limits exposure to unprotected sites, and the RFC has limited exposure to all heights. So the RFC is not connected to the hypothetical. And then the last oddity in this particular odyssey is that the judge then goes back and uses a 30% reduction number which was connected to the hypothetical that had to do with using the cane standing and walking. And he takes those numbers and connects them to the new hypothetical that's disconnected, or excuse me, the new residual functional capacity. The main residual functional capacity finding, he uses the reduced numbers that are supposed to be connected to the hypothetical which he modified. That is part of the morass of this case. That's why I included all of the vocational information in the facts section, which you'll notice is much more detailed than I usually give, because I wanted you to see that. I can't tell you that it's preserved. There's an argument that it's waived, and if it's waived, then I'd ask you under the singleton sua sponte doctrine of the U.S. Supreme Court case to reach the issue on the basis of justice. Well, the problem often is, and you get down to this level, is it's reduced to do a limited number of jobs in whatever they are. It doesn't take a lot of running around and some other things. And, of course, you end up with, if you look at these, you've probably done enough disability cases, it ends up with a job that person doesn't want and usually with an employer who really doesn't want them to work for. But that's the issue we have. When you get into the residual functional capacity of someone, it usually has some level of a capacity where they can do things. He certainly can think and he can use at least one hand and maybe more and do certain jobs. Now, that's not jobs that any of us would want, but nevertheless, that's what this comes down to. You're correct, and I believe that overwhelming medical evidence supports disability. It's almost laughable that we expect this person to work a one-armed job where they're standing six to eight hours a day. So I'll reserve the rest of the time for rebuttal, Your Honor. Thank you. May it please the Court. Lou Han on behalf of the Commissioner of Social Security. I'll begin where Mr. Forbes started his presentation, which is the fact that Mr. Vong's stop – the fact that he stopped working equals a finding of disability, or at least that's what it sounded like the opposing counsel suggested. But of course, this Court knows that that is not the standard that Congress put forward when it passed the Social Security Act. The mere fact that Mr. Vong left the job that he had at a pre-kindergarten is really not material to the five-step process that the ALJ engaged in here to find whether or not the evidence that Mr. Vong supported with the help of an attorney showed that he was disabled. And as Your Honor pointed out, that means inability to do any job that exists in his region or, as the Act puts forth, in the nation. And here, the fewer than 300 pages of medical evidence that Mr. Vong submitted simply fell short of showing disability. The issue, as opposing counsel pointed out, that is preserved for appeal related to the residual functional capacity and the ALJ's weighing of Dr. Binlon's opinion. Here, we argued in our brief and we maintained that the ALJ more than reasonably explained the reasons for assessing Mr. Vong with a particular reduced light work residual functional capacity, as well as giving partial weight to Mr. Binlon's opinion. As also opposing counsel pointed out, Dr. Binlon's notes, which are in the record, are handwritten notes and for the most part show a lot of medication adjustments and really just visitations to manage the neuropathy, diabetes, which, as the ALJ observed, were being managed with medication and conservative treatment. It wasn't until April 2015 when Mr. Vong went to Dr. Binlon and asked for disability supportive paperwork and documentation that Dr. Binlon then gave an opinion which, if the court reviews, says walking and or standing less than an hour and sitting less than an hour per day, essentially that opinion would have Mr. Vong lying down for more than 22 hours a day. But again, as the ALJ observed... Is that the third alternative to standing and sitting? Your Honor, just as I'm looking at the different postural activities and an individual, if sitting, walking and standing are all three under an hour, there could be some other postural activities that are other than lying down, but no matter what, Your Honor, the point is all of those three activities being taken off the table leaves 22 plus hours a day that, according to his doctor, again, after being approached to give disability supportive opinions, that really isn't something that the ALJ was able to track in his notes. Well, you're saying that's not the case. He has to lie down for the rest of the day. He's still capable of doing certain things. Precisely, Your Honor. In fact, in 2014, he began physical therapy. He also went to a chiropractor. It was in April 2014. He told a physical therapist at the initial intake that he's retired and he enjoys fishing. The following month in May, he actually reported that he had gone fishing. The ALJ looked at that evidence, looked at evidence from a cardiologist, a Dr. Ahmad, and in January 2015, when Dr. Ahmad asked Mr. Vong if he had musculoskeletal or neurological deficits or problems, Mr. Vong actually denied those, and that did make its way into Dr. Ahmad's treatment notes. The ALJ looked at all of this relevant evidence, and it did not paint a picture of disability, despite the fact that at the hearing, Mr. Vong, and, of course, in his briefing before the district court and now before this court, he's maintaining that he is extremely limited. However, the ALJ was more than reasonable to look back at the contemporaneous medical treatment evidence, which consistently showed no musculoskeletal deficits on par with the kind of limitations that Mr. Vong is now alleging. Very recently, in a published decision in the Helen Overton case versus Saul, this court actually specifically said an ALJ is allowed to look at the discrepancy between a claimant's representations of total disability at the administrative hearing versus the contemporaneous medical records, which here, again, fewer than 300 pages, and fall far short of showing the level of disabling symptoms that Mr. Vong now alleges. I will briefly touch on the issue that is not preserved for appeal, which relates to the vocational expert testimony and the hypothetical that was given to the vocational expert. This court has held time and again that those issues, if not preserved, are waived. In the waiver of principles, it would really open up the gate to have claimants and the representatives to raise a host of new issues here that they did not raise in the court below if this court is even going to address the vocational expert and hypothetical questions, issues that opposing counsel brings up in his brief for the first time to this court. But I will just simply say that the issues that opposing counsel points out between the hypothetical question and the residual functional capacity do not affect the job base. The modification of the word protected in Heights doesn't affect the usher, information clerk, furniture rental consultant job numbers that were available. The other kinds of differences between the ambulation with a cane versus walking and standing, that's actually more restrictive. If a vocational expert says an individual with more restrictions can do those sample jobs, well, certainly with fewer restrictions, those jobs would still be available. Are those jobs supposed to be just examples? Yes, Your Honor. Obviously, that's not limited. I don't know. Is usher one of his? I don't remember now. I mean, what's an usher do? Well, with each of these, you can look it up and see what someone can actually do. And I guess that's always the problem, at least that I have, with disability cases. They can still do something. They can think. They can communicate. They can do things while they're sitting down. I don't know about this one-armed issue situation, but I guess that's the problem with disability. Is somebody going to be totally disabled or whether they're reduced to a certain level where they can do some things and function? Yes. Your Honor points out that the Social Security Administration's definition of disability means total disability versus, for example, the Veterans Affairs percentage of disability. But we're working under what the Social Security Act has constructed in this scheme of disability. And I'm glad Your Honor mentioned the one-arm characterization, which comes from opposing counsel. That's not really a characterization that you can find in the ALJ's decision. The ALJ limited Mr. Fong to occasional fingering and handling, which means no more than a third day. Nowhere can I see these jobs characterized as being only done with one arm. Certainly, these are the kinds of limitations in the RFC, the other stooping, crawling limitations, the lifting limitation, which comes with light work. These are the limitations the ALJ assessed based on the relevant medical evidence. And fundamentally, this is not a case where we cannot track the ALJ's reasoning. The ALJ was not unreasonable in crafting this particular residual function capacity. We asked this court to affirm the ALJ's decision because the ALJ took the relevant evidence and gave what was the maximum that Mr. Fong can do. Mr. Fong is now arguing that this is a totally unreasonable decision and that perhaps no reasonable person would have come out the way the ALJ did. But that's simply not true when the court looks at the medical evidence that the ALJ cites in his 11-page decision here. Unless the panel has more questions, we ask that the court affirm the ALJ's decision denying disability. Thank you, counsel. The RFC has to be connected to the hypothetical. If it's not, there's no substantial evidence. There's no amount of reasonableness that is there. The one-armed reference comes from the vocational expert who justified the 30% reduction, which if you read it, the 30% reduction in jobs has no rational basis at all. He just pulls it out of thin air. You can't have reasonableness when that happens. Well, not down to 30%. It's maybe not for you to do, but somebody said, well, what is included in that 30%? Not included versus what you can still do. Did he not get into that? I don't think so. He was coming up with a justification as to why the total numbers he perceived in relation to a job, the total national numbers, were why he wanted to reduce them further because of the one-armed aspect of the jobs. In one sense, this is a very, very difficult case. The errors in this case are legion. I'm not sure what the word is, but you know what I mean. There are many. Lots of them. And it requires the highest technical skill in looking at this case, which all of you have because all of you are very experienced. I'll testify to the old people. How's that? Well, I've been doing this particular area of law about 26 years or so, so I think I'm in your category, too. So thank you, Your Honor. Thank you, Mr. Forbes. Thanks to both counsel, and the case is taken under advisement.